1
2
3
4
5
6 **UNITED STATES DISTRICT COURT**
7 **DISTRICT OF NEVADA**
8
9 OSCAR ART STANLEY,                )
                                    )
10             Petitioner,          )        3:06-cv-00126-LRH-VPC
                                    )
11 vs.                              )
                                    )        <u>ORDER</u>
12 GLEN WHORTON, *et al.*,          )
                                    )
13             Respondents.         )
                                    )
14 _____)

15        This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Oscar

16 Stanley, a Nevada prisoner.  The action comes before the court with respect to its merits.  The Court

17 will deny the petition.

18 **I.        Facts and Procedural Background**

19        An amended criminal complaint was filed against the petitioner in the Justice Court of Las

20 Vegas Township on December 13, 2001, charging the petitioner with robbery (count I), larceny from

21 the person (count II), grand larceny auto (count III), burglary (count IV), attempted murder with the

22 use of a deadly weapon (count V), battery with a deadly weapon with substantial bodily harm (count

23 VI), mayhem (count VII), burglary (count VIII), robbery (count IX), attempted robbery (count X),

24 and attempted grand larceny auto (count XI).  Exhibit 3.[1]  A preliminary hearing was held on

25 December 18, 2001.  Exhibit 4.  At the hearing, the state gave oral notice of its intent to seek a large

26 violent habitual criminal enhancement.  *Id.*  The justice court found sufficient evidence to support

27 _____

28        [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in
support of their answer to the habeas petition and are located in the record at docket #17-22.

1   the amended complaint.  *Id.*  Petitioner entered a not guilty plea on January 3, 2002.  Exhibit 6.  An

2   information was filed in the District Court for Clark County on December 31, 2001, charging the

3   petitioner with the same crimes but adding in count X, attempted robbery of a victim sixty-five years

4   of age or older.  Exhibit 5.

5        Counsel for petitioner then moved to strike the duplicitous counts and to suppress the

6   petitioner's confession.  Exhibits 13 and 14.  The trial court denied these motions at a March 1, 2002

7   hearing.  Exhibit 17.  A jury trial was held between March 4, 2002, and March 12, 2002.  Exhibits

8   18-26.  The jury convicted petitioner as charged of counts I, II, VI, VII, IX, and X.  Exhibit 28.  The

9   jury also convicted petitioner of two counts of unlawful taking of a vehicle without the consent of the

10  owner, lesser included offenses of counts III and XI.  *Id*.  Petitioner was acquitted on counts IV, V,

11  and VII, the burglary counts and the attempted murder count.  *Id.*

12       Defense counsel then moved to dismiss counts III and XI, arguing those counts merged into

13  counts I and X.  Exhibit 29.  Counsel also moved to strike "the victim sixty-five years of age or

14  older" language from count X.  Exhibit 30.  The state district court dismissed counts III and XI.

15  Exhibit 32.  The court then sentenced the petitioner to life without the possibility of parole for counts

16  I and IX, as a habitual felon, to 48 months imprisonment with parole eligibility in 12 months for

17  count II, to 180 months in prison with parole eligibility after 72 months for count VI, and to 120

18  months in prison with parole eligibility in 48 months for both counts VII and X.  *Id.*  The sentences

19  are to be served consecutively.  *Id.*  A judgment of conviction was entered on June 4, 2002.  Exhibit

20  33.

21       Petitioner appealed, arguing (1) his rights to due process and a fair trial were violated when

22  the trial court denied his motion to suppress his statement and when the court responded incorrectly

23  to a jury question, (2) his rights to due process and a fair trial were violated when the court denied

24  defense counsel's request to ask the jury its pre-submitted voir dire questions, when the court

25  permitted the state to use a peremptory challenge in violation of *Batson*, and when the trial court

26  dismissed a black juror who arrived fifteen minutes late on the day of jury selection, and (3) his right

27  to be protected from double jeopardy was violated when the court permitted the jury's verdict of

28  guilty on both battery with substantial bodily harm and mayhem, or that there was insufficient

2

1  evidence to support the conviction of mayhem.  Exhibits 34 and 35.

2       On November 4, 2003, the Nevada Supreme Court affirmed in part and reversed in part,

3  finding that the conviction of battery with the use of a deadly weapon with substantial bodily harm

4  should be reversed, as this conviction was redundant to the mayhem conviction.  Exhibit 38.

5  Remittitur issued on December 2, 2003.  Exhibit 39.  On January 16, 2004, the state district court

6  entered an amended judgment of conviction, striking the conviction for battery with a deadly weapon

7  with substantial bodily harm.  Exhibit 40.

8       Petitioner then filed a state habeas corpus petition on April 19, 2004,  alleging nine grounds

9  for relief.  Exhibit 41.  The state district court held an evidentiary hearing on the petition, and denied

10  the petition.  Exhibits 46 and 48.  Petitioner appealed, and the Nevada Supreme Court affirmed the

11  lower court's denial of the petition.  Exhibit 49.  Remittitur issued on January 3, 2006.  Exhibit 50.

12       Petitioner mailed his federal habeas corpus petition on March 2, 2006 (docket #10).

13  Respondents have answered petitioner's claims (docket #16), petitioner has filed a traverse (docket

14  #27) and respondents have filed a reply (docket #30).

15  **II.**     **Federal Habeas Corpus Standards**

16       The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard

17  for the Court's consideration of this habeas petition:

18  
19  > An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

20  
21  > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

22  
23  > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

24  

25  28 U.S.C. §2254(d).

26       The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

27  in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

28  to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693 (2002).  A state court decision is

contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254,

"'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

Court's] precedent.'"  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529

U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court

precedent "'if the state court identifies the correct governing legal principle from [the Supreme

Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'"

*Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The unreasonable application clause

"requires the state court decision to be more than incorrect or erroneous"; the state court's

application of clearly established law must be objectively unreasonable.  *Id*. (*quoting Williams*, 529

U.S. at 409).  *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application

of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v. Nunnemaker*,

501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be

correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**III.    Discussion**

**A.    Ground One**

In his first ground for relief petitioner alleges that his Fifth and Fourteenth Amendment rights

were violated when the state improperly gave notice of its intent to seek habitual felon adjudication,

pursuant to NRS 207.012, following the preliminary hearing.  Petitioner also contends that the state

was estopped from imposing or seeking habitual felon adjudication once he was acquitted of the

charge of attempted murder.  Petitioner states that due to ineffective assistance of trial counsel and

appellate counsel this issue was not raised at trial and sentencing or on appeal.

At the end of the preliminary hearing held on December 18, 2001, the state gave the

4

1   petitioner and his attorney oral notice of its intent to seek habitual felon adjudication.  Exhibit 4, T

2   66.  The state noted that the petitioner had a prior 1981 robbery conviction from Illinois, and a 1994

3   armed robbery conviction from Illinois.  *Id.*  Defense counsel objected.  *Id.*  The state explained that

4   it was just putting the defense on notice that they intended to seek habitual criminal status.  *Id.*  The

5   amended information contained the following language:

6   > Defendant Oscar A. Stanley...is placed on notice that, in accordance with
    > the authorization of NRS 207.012, punishment imposed pursuant to the

7   > above-stated violent habitual criminal statute will be urged upon the Court
    > if said Defendant is found guilty on the primary offenses of Robbery and

8   > Attempt Murder With Use of a Deadly Weapon, for which the Defendant
    > is presently charged.

9

10  Exhibit 11.  Petitioner was convicted of the two robbery counts he was charged with, was acquitted

11  of the attempted murder charge, and was sentenced as a habitual felon.  Exhibit 33.

12      Petitioner argued at the evidentiary hearing in the state court the oral notice of the state's

13  intent to seek habitual felon status was improper, and the state could not sentence him as a habitual

14  criminal as he was acquitted of the attempted murder charge.  Exhibit 46.  Petitioner's contention is

15  essentially that the language in the information of the state's intent to seek habitual felon status was a

16  condition precedent or a contractual agreement, as the notice stated that if petitioner is found guilty

17  of robbery <u>and</u> attempted murder then punishment would be imposed according to the violent

18  habitual offender statue.

19      Respondents argue that this claim was procedurally defaulted in the state court.

20      **1.    Procedural Default**

21      Generally, in order for a federal court to review a habeas corpus claim, the claim must be

22  both exhausted and not procedurally barred.  *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir.

23  2003).  Procedural default refers to the situation where a petitioner in fact presented a claim to the

24  state courts but the state courts disposed of the claim on procedural grounds rather than denying the

25  claim on the merits.  A federal court will not review a claim for habeas corpus relief if the decision

26  of the state court regarding that claim rested on a state law ground that is independent of the federal

27  question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31

28  (1991).  The *Coleman* Court stated the effect of a procedural default as follows:

1

2

3

4

> In all cases in which a state prisoner has defaulted his federal claims in state
> court pursuant to an independent and adequate state procedural rule, federal
> habeas review of the claims is barred unless the prisoner can demonstrate
> cause for the default and actual prejudice as a result of the alleged violation
> of federal law, or demonstrate that failure to consider the claims will result
> in a fundamental miscarriage of justice.

5   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

6   default doctrine ensures that the state's interest in correcting its own mistakes is respected in all

7   federal habeas cases.  *See Koerner*, 328 F.3d at 1046.

8   **2.    Procedural Default in the State Court**

9   Respondents argues that this ground for relief was procedurally defaulted in the state court.

10  On appeal, the Nevada Supreme Court addressed petitioner's claim that trial counsel was ineffective

11  for failing to object to the inadequate notice of the state's intent to seek habitual felon adjudication.

12  Exhibit 49.  The court also denied petitioner's claim that appellate counsel was ineffective for failing

13  to raise errors in his adjudication as a habitual felon on the merits.  *Id.*  However, the court also

14  stated that to the extent the petitioner raised any of his issues "independently from his ineffective

15  assistance of counsel claims" that the court found those claims waived as they should have been

16  raised on direct appeal.  *Id.* at 2, n.2 (citing NRS 34.810(1)(b)).  The court found that petitioner had

17  not demonstrated good cause for his failure to raise any such claims on appeal.  *Id.*

18  The instant claim does not contend that trial counsel or appellate counsel was ineffective, and

19  instead argues that the habitual felon adjudication is illegal or improper due to the state's improper

20  oral notice and the state's failure to abide by the condition precedent or agreement made in the notice

21  given in the amended information.  It appears that this claim was procedurally defaulted in the state

22  court.

23  To the extent that it can be argued that the Nevada Supreme Court's decision was silent on

24  this claim, as it did not specifically address this claim, then this Court would look to the last

25  reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512

26  F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).  The state district court also denied this claim, stating

27  that the petitioner failed to show good cause why he did not present his due process violation claims

28  on direct appeal.  Exhibit 48.  The state district court found the claim was waived.  *Id.*

1    Therefore, it appears that this claim was procedurally defaulted in the state court, as both the

2    state district court and the Nevada Supreme Court found the claim was waived as it should have been

3    raised on direct appeal.

4           **3.      The Procedural Default Was an Independent and Adequate State Law Ground
                      for the Nevada Supreme Court's Disposition of Petitioner's Claims**

5

6           For the procedural default doctrine to apply, "a state rule must be clear, consistently applied,

7    and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005,

8    1010 (9th Cir. 1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129

9    (9th Cir. 1996).

10          NRS 34.810 has been held to be an independent and adequate state procedural rule that will

11   bar federal review. *See Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003); *Bargas v. Burns*,

12   179 F.3d 1207 (9th Cir. 1999). This court finds that the Nevada Supreme Court's and the state

13   district court's determination that ground one was procedurally barred under NRS 34.810 was an

14   independent and adequate ground for the court's denial of the state habeas petition.

15          **4.      Cause and Prejudice or Fundamental Miscarriage of Justice**

16          To overcome a procedural default, a petitioner must establish either (1) "cause for the default

17   and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result

18   in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

19   omitted). Cause to excuse a procedural default exists if a petitioner can demonstrate that some

20   objective factor external to the defense impeded the petitioner's efforts to comply with the state

21   procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Murray v. Carrier*, 477 U.S. 478,

22   488 (1986). The prejudice that is required as part of the showing of cause and prejudice to overcome

23   a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d

24   613, 617 (9th Cir. 1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

25          Petitioner argues, in his traverse, that trial counsel and appellate counsel were ineffective for

26   failing to raise this claim on appeal. Ineffective assistance of counsel may satisfy the cause

27   requirement to overcome procedural default only if the independent claim of ineffective assistance of

28   counsel itself has been exhausted in state court. *Murray*, 477 U.S. at 488-89.

Petitioner has exhausted the individual claims of ineffective assistance of trial counsel and appellate counsel in the state courts. Exhibits 41 and 49. Therefore petitioner can rely on these claims to support his allegation of cause in an attempt to overcome the state procedural bar. However, to establish prejudice based on the deficient assistance of appellate counsel, petitioner must show that the omitted issue would have a reasonable probability of success on appeal. *Smith v. Robbins*, 52 U.S. 259, 285 (2000); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Petitioner has not shown that the omitted claims had a reasonable probability of success on the merits, as there is not a reasonable probability that had these claims been raised on direct appeal that the outcome of the appeal would have been different.

Nevada Revised Statute 207.012 states:

1. A person who:

(a) Has been convicted in this State of a felony listed in subsection 2; and

(b) Before the commission of that felony, was twice convicted of any crime which under the laws of the situs of the crime or of this State would be a felony listed in subsection 2, whether the prior convictions occurred in this State or elsewhere,

is a habitual felon and shall be punished for a category A felony by imprisonment in the state prison:

(1) For life without the possibility of parole;

(2) For life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or

(3) For a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served.

2. The district attorney shall include a count under this section in any information...if each prior conviction and the alleged offense committed by the accused constitutes a violation [of this section.]

3. The trial judge may not dismiss a count under this section that is included in an indictment or information.

Pursuant to the statute, the trial court must sentence a petitioner to one of the listed terms of imprisonment if the petitioner was convicted of an enumerated felony, and has two prior enumerated felonies. Petitioner was convicted of two counts of robbery, which is a felony listed in subsection 2 of the statute. NRS 200.380; NRS 207.012 2. Furthermore, the state listed petitioner's two prior

1   felonies as robbery and armed robbery, which also satisfy the statute. *Id.*

2        There is no indication that the notice the state gave was improper.   In Nevada, a criminal

3   defendant is entitled to "reasonable notice" of the state's intent to seek habitual criminal or felon

4   adjudication as a matter of constitutional due process. *See Parkerson v. State*, 678 P.2d 1155 (Nev.

5   1984) (citing *Oyler v. Boles*, 386 U.S. 448 (1962)).  Even if the oral notice was somehow improper,

6   which it does not appear to be, the notice given in the amended information was proper.  The state is

7   not required to prove the prior convictions at the time of the notice; the state only need to prove the

8   prior convictions at the time of sentencing.  Furthermore, although the notice stated that if the

9   petitioner was convicted of robbery <u>and</u> attempted murder that a habitual criminal sentence would be

10   sought, this was not a binding contractual agreement or condition precedent.  The state merely listed

11   in its notice that the petitioner was eligible for violent habitual criminal sentences for both the

12   robbery charges and the attempted murder charge.  Petitioner's conviction of two counts of robbery

13   was sufficient for a habitual criminal sentence under NRS 207.012.

14        Petitioner has not met the standard for a showing of ineffective assistance of  trial counsel or

15   appellate counsel as cause for procedural default.  This claim will be dismissed as it has been

16   procedurally defaulted.

17        **B.**     **Ground Two**

18        In his second ground for relief the petitioner contends that his Fifth, Sixth, and Fourteenth

19   Amendment rights to effective assistance of counsel and due process of law were violated when trial

20   counsel failed to challenge the habitual criminal notice and the subsequent adjudication as a habitual

21   criminal.

22        In order to prove ineffective assistance of counsel, petitioner must show (1) that counsel

23   acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of

24   professionally competent assistance and (2) the deficient performance prejudiced the outcome of the

25   proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

26        Ineffective assistance of counsel under *Strickland* requires a showing of deficient

27   performance of counsel resulting in prejudice, "with performance being measured against an

28   'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v.*

1    *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

2    ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

3    to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

4    5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

5    reasonable professional assistance.  *Id.*

6        The Nevada Supreme Court, in affirming the district court's denial of petitioner's second

7    claim for relief, stated:

8            First, appellant claimed that his counsel was ineffective for failing to object
             to inadequate notice of a possible habitual criminal adjudication.  Specifically,
9            appellant argued that the State should not have been allowed to seek a habitual
             criminal sentence since he was acquitted of the charge of attempted murder, and the
10           State had specified verbally that it would only seek habitual criminal sentencing if
             appellant was convicted of robbery and attempted murder.  Appellant has failed to
11           demonstrate that counsel's performance was ineffective.  Appellant was found
             guilty of two counts of robbery, which was sufficient to adjudicate appellant a
12           habitual felon pursuant to NRS 207.012(2).  Appellant was specifically noticed of
             the State's intent to seek habitual felon adjudication during his preliminary hearing
13           and per amended information on February 5, 2002.  The district court, in its
             discretion, adjudicated appellant a habitual felon.  Therefore, appellant failed to
14           demonstrate that counsel's performance was deficient, and the district court did not
             err in denying this claim.

15

16   Exhibit 49.

17       The Nevada Supreme Court's determination was not an objectively unreasonable application

18   of *Strickland*.  As was discussed in relation to ground one, the state's notice of intent to seek habitual

19   criminal adjudication was sufficient, as petitioner is only entitled to reasonable notice.  *Parkerson*,

20   678 P.2d at 1156.  The state gave the petitioner both oral and written notice.  Moreover, the notice

21   did not create some type of condition precedent, i.e., that petitioner had to be convicted of both

22   attempted murder <u>and</u> robbery.  Under NRS 207.012, petitioner can be sentenced as a violent

23   habitual criminal (habitual felon) if he was convicted of one of the enumerated felonies, and has two

24   prior felony convictions.  Petitioner was convicted of two counts of robbery, and had two prior

25   felony convictions that qualified under the statute.  Although petitioner was acquitted of the

26   attempted murder charge, he still qualified to be adjudicated as a violent habitual criminal by virtue

27   of being convicted of the robbery counts.

28       Petitioner has not shown that trial counsel was ineffective for failing to challenge the state's

1    notice of intent to seek violent habitual criminal adjudication or the trial court's adjudication of the

2    petitioner as a habitual criminal even though he was acquitted of the attempted murder charge.  The

3    Court will deny ground two.

4         **C.    Ground Three**

5         In ground three the petitioner alleges that his Fifth and Fourteenth Amendment rights to due

6    process were violated when the state failed to present two certified judgments of convictions and

7    instead only presented one certified copy of a judgment of conviction.  Two certified copies of prior

8    convictions are required in order to adjudicate a criminal defendant as a habitual criminal.  *See* NRS

9    207.016 (5) (stating for the "purposes of NRS 207.010, 207.012 and 207.014, a certified copy of a

10   felony conviction is prima facie evidence of conviction of a prior felony").

11        Respondents argue that this claim was also procedurally defaulted in the state court.

12        **1.    Procedural Default in the State Court**

13        On appeal, the Nevada Supreme Court addressed the claim that counsel was ineffective for

14   failing to object to the state's failure to present two certified copies of judgments of convictions at

15   sentencing, as is required for habitual felon sentencing.  Exhibit 49.  The court also stated that to the

16   extent the petitioner raised this issue "independently from his ineffective assistance of counsel

17   claims" that the court found those claims waived as they should have been raised on direct appeal.

18   *Id.* at 2, n. 2 (citing NRS 34.810(1)(b)).  The court also found that petitioner had not demonstrated

19   good cause for his failure to raise any such claims on appeal.  *Id.*

20        The instant claim does not contend that trial counsel or appellate counsel was ineffective for

21   failing to challenge the state's failure to provide two certified copies of judgments of convictions.  It

22   appears that this claim was procedurally defaulted in the state court.

23        To the extent that it can be argued that the Nevada Supreme Court's decision was silent on

24   this claim, as it did not specifically address this claim, then this Court would look to the last

25   reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512

26   F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).  The state district court also denied this claim, stating

27   that the petitioner failed to show good cause why he did not present his due process violation claims

28   on direct appeal.  Exhibit 48.  The state district court found the claim was waived.  *Id.*

1     Therefore, it appears that this claim was procedurally defaulted in the state court, as both the

2  state district court and the Nevada Supreme Court found the claim was waived as it should have been

3  raised on direct appeal.

4         **2.**     **The Procedural Default Was an Independent and Adequate State Law Ground for the Nevada Supreme Court's Disposition of Petitioner's Claims**

5

6     For the procedural default doctrine to apply, "a state rule must be clear, consistently applied,

7  and well-established at the time of the petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005,

8  1010 (9th Cir. 1994). *See also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129

9  (9th Cir. 1996).

10     NRS 34.810 has been held to be an independent and adequate state procedural rule that will

11  bar federal review. *See Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003); *Bargas v. Burns*,

12  179 F.3d 1207 (9th Cir. 1999). This court finds that the Nevada Supreme Court's and the state

13  district court's determination that ground one was procedurally barred under NRS 34.810 was an

14  independent and adequate ground for the court's denial of the state habeas petition.

15         **4.**     **Cause and Prejudice or Fundamental Miscarriage of Justice**

16     To overcome a procedural default, a petitioner must establish either (1) "cause for the default

17  and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result

18  in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

19  omitted). Cause to excuse a procedural default exists if a petitioner can demonstrate that some

20  objective factor external to the defense impeded the petitioner's efforts to comply with the state

21  procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Murray v. Carrier*, 477 U.S. 478,

22  488 (1986). The prejudice that is required as part of the showing of cause and prejudice to overcome

23  a procedural default is "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d

24  613, 617 (9th Cir. 1998); *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

25     Petitioner does not state any arguments relating to cause and prejudice, therefore the Court

26  will dismiss ground three, as it was procedurally defaulted.

27     To the extent it could be argued that petitioner claims that trial counsel was ineffective for

28  failing to argue this claim on appeal, petitioner may have shown cause and prejudice. Ineffective

1   assistance of counsel may satisfy the cause requirement to overcome procedural default only if the

2   independent claim of ineffective assistance of counsel itself has been exhausted in state court.

3   *Murray*, 477 U.S. at 488-89.

4        Petitioner has exhausted the individual claim of ineffective assistance of trial counsel in the

5   state courts.  Exhibits 41 and 49.  Therefore petitioner can rely on this claim to support his allegation

6   of cause in an attempt to overcome the state procedural bar.   However, petitioner has not shown that

7   trial counsel was ineffective for failing to challenge the state's failure to present two certified copies

8   of judgments of convictions.

9        The state district court addressed this claim at the evidentiary hearing.  Exhibit 46.   Trial

10  counsel testified that she did not object to the prior convictions because she received two certified

11  and stamped judgments of convictions.  *Id.* at 16.  Counsel noted that they were self-authenticating.

12  *Id.*  Petitioner seemed to be arguing that one document was a "judgement of conviction" while the

13  other was a commitment order to the department of corrections and therefore did not count as a prior

14  conviction because it was not a "judgment of conviction."  *Id.* at 17-18.  The trial court rejected this

15  argument.  *Id.* ; Exhibit 48.

16       On appeal the Nevada Supreme Court affirmed the denial of this claim, stating that the claim

17  was belied by the record.  Exhibit 49.  The court noted that during sentencing the state presented

18  certified copies of both prior convictions.  *Id.*  The Nevada Supreme Court's determination that this

19  claim was without merit is not objectively unreasonable.  A state court's factual determination may

20  not be overturned unless this court cannot "reasonably conclude that the finding is supported by the

21  record.  *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32

22  (2003) (stating "[f]actual determinations by state courts are presumed correct absent clear and

23  convincing evidence to the contrary" and a decision made by a state court based upon a factual

24  determination "will not be overturned...unless objectively unreasonable in light of the evidence

25  presented in the state-court proceeding").

26       The documents presented at sentencing included a 1981 certified statement of

27  conviction/disposition for robbery.  Exhibit 41.  The other document was a certified statement of

28  conviction/disposition for armed robbery in 1994.  *Id.*  The 1994 conviction also showed a

1 commitment order. *Id.* Both convictions noted that the petitioner was represented by counsel. *Id.*

2 There is no indication that counsel should have objected to the 1994 conviction.

3      Petitioner has not met the standard for a showing of ineffective assistance of trial counsel as

4 cause for procedural default. This claim will be dismissed as it has been procedurally defaulted.

5      **D.    Ground Four**

6      In ground four the petitioner alleges that trial counsel was ineffective when counsel failed to

7 investigate the prior convictions and did not contest the state's offer of proof at sentencing. This

8 claim was discussed above, in conjunction with ground three, and this Court concluded that there

9 was no indication that trial counsel was deficient for failing to investigate or object to the judgments

10 of convictions that the state offered at sentencing.

11      The Court will deny ground four.

12      **E.    Ground Five**

13      In ground five petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights to

14 effective assistance of counsel and due process were violated when trial counsel failed to present a

15 defense to the crimes charged. Petitioner asserts that there was existing evidence that he had a

16 mental illness, organic brain damage, and an I.Q. verging on mental retardation, yet counsel did not

17 investigate this defense or contact witnesses.

18      Petitioner's claim is belied by the record. At the evidentiary hearing trial counsel testified

19 that she received documents relating to petitioner's mental illness, mental health, and mental

20 retardation. Exhibit 46, T 26. Furthermore, counsel stated that Dr. Paglini examined petitioner. *Id.*

21 Counsel determined that she could not put forth a defense based upon petitioner's mental health

22 because they could not show that the petitioner lacked the capacity to form intent for the crimes. *Id.*

23 Moreover, counsel noted that Dr. Paglini, a mental health expert, would not have testified in the

24 petitioner's favor. *Id.* at T 27. Petitioner was also evaluated for competency by two different

25 psychologists. *Id.* at T 31. Both psychologists stated that the petitioner was competent. *Id.*

26      The state noted that the petitioner was only convicted of the general intent crimes that he was

27 charged with, and not the specific intent crimes. *Id.* at T 33. The state district court ruled that trial

28 counsel did explore a mental health defense or some type of diminished capacity defense. *Id.* at 33.

However, the results of the investigation would not support the theory of defense, therefore counsel

did not call these witnesses at trial. *Id.*   The court also stated that defense counsel made a tactical

decision to not enter the expert witness's report at trial, as it did not support the defense theory. *Id.*

The court also addressed petitioner's claim that counsel failed to interview witnesses. *Id.* at

T 45.  Petitioner stated that counsel failed to interview other witnesses about his mental health

history. *Id.*  Defense counsel testified that she attempted to contact every hospital and mental health

facility, and some of the witnesses could not be contacted. *Id.*  Defense counsel was able to contact

some of the facilities, and received documents from them, but concluded that none of the documents

or potential witnesses would be of assistance at trial. *Id.* at 46.  The court concluded that the

evidence counsel did find after investigating showed that there was not a mental health defense. *Id.*

at 51.

The Nevada Supreme Court affirmed the lower court's denial of this claim, stating:

> Third, appellant claimed that counsel was ineffective for failing to
> investigate, prepare and present a defense to the charges.  Specifically,
> appellant claimed that counsel did not present any witnesses.  Appellant
> failed to demonstrate that his counsel's performance was deficient or that
> he was prejudiced and the outcome would have been different with further
> investigation and presentation of witnesses.  Counsel stated during the trial
> that she had tried to contact five witnesses supplied by appellant.  Of those
> that could be contacted, counsel testified at the evidentiary hearing that she
> made a tactical decision not to present the witnesses because they would
> not have been beneficial to appellant's case.  Appellant failed to state how
> any of these witnesses would have aided his defense.  Counsel did present
> a defense; however, options were limited because of the strength of the
> State's case.  Appellant failed to demonstrate that counsel's performance
> was ineffective, and we conclude that the district court did not err in
> denying this claim.
>
> Fourth, appellant claimed that counsel was ineffective for failing to
> present appellant's defense theory that his criminal behavior was excusable
> because he had a mental illness and was a drug addict.  Specifically,
> appellant argued that counsel withdrew the originally noticed mental health
> expert witness and failed to contact mental health professionals from
> appellant's past.  Appellant failed to demonstrate that his trial counsel's
> performance was deficient or that he was prejudiced.  This court has
> rejected the doctrine of partial responsibility or diminished capacity. [fn 8:
> *Ogden v. State*, 96 Nev. 258, 262, 607 P.2d 576, 578 (1980); *see also Fox
> v. State*, 73 Nev. 241, 244-5, 316 P.2d 924, 926 (1957).] Appellant was
> correct that one mental health expert witness was originally notice;
> however, the expert's testimony was withdrawn because, after examining
> appellant, he stated that he could not testify in support of a mental health
> defense.  Counsel testified during the evidentiary hearing that if she had
> put the expert on the stand, she felt it was probably that the jury would have

1

2

3

4

5

> determined that appellant was capable of forming intent.   Even withstanding the fact that no mental  health expert testified, counsel was able to convince the jury that appellant was not guilty on all of the specific intent crimes.  The report that the expert wrote, and one from a past medical health provider, were supplied to the court prior to sentencing.  Thus, appellant failed to demonstrate that counsel's performance was ineffective or that he was prejudiced by the lack of testimony by the mental health expert.  Accordingly, the district court did not err in denying this claim.

6   Exhibit 49.

7        Petitioner has not shown that the Nevada Supreme Court's determination was objectively

8   unreasonable.  Counsel testified at the evidentiary hearing that she investigated a mental health

9   defense.  Counsel contacted witnesses, received documents, and had the petitioner psychologically

10  evaluated by three doctors.  The witnesses and documents did not support a mental health defense.

11  There is no indication that trial counsel performed deficiently under *Strickland*.

12        Furthermore, the United States Supreme Court has noted that "strategic choices made after

13  thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

14  *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  "Whether counsel's actions constituted a

15  'tactical' decision is a question of fact, and...[a court] must decide whether the state court made an

16  unreasonable determination of the facts in light of the evidence before it."  *Pinholster v. Ayers*, 525

17  F.3d 742 (9th Cir. 2008) (citing *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

18  banc); *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004)).  There is no indication that the

19  state court unreasonably determined that counsel's decision was tactical, in light of the evidence at

20  the evidentiary hearing.

21        The Court will deny ground five.

22        **F.        Ground Six**

23        In his sixth claim petitioner alleges his Fifth, Sixth, and Fourteenth Amendment rights to

24  effective assistance of counsel, a fair trial, and due process of law were violated when trial counsel

25  failed to give an opening statement and conceded petitioner's guilt.

26        At the evidentiary hearing defense counsel testified that Mr. Avants, petitioner's other

27  counsel at trial, did make a brief opening statement.  Exhibit 46 at T 54.  Defense counsel stated that

28  Mr. Avants did what they thought was necessary for an opening statement, in that he told the jury to

16

1    be open minded and listen carefully to what was said.  *Id.*  The state noted that opening statements

2    are not evidence to be considered by the jury.  *Id.* at 55.  The Nevada Supreme Court affirmed the

3    denial of this claim, stating that the claim was belied by the record.  Exhibit 49.  The court noted that

4    counsel did give an opening statement, albeit brief.  *Id.*  The court also stated that petitioner failed to

5    specify what counsel should have additionally included in the opening statement, such that there

6    would be a reasonable probability of a different outcome.  *Id.*

7          Moreover, the Nevada Supreme Court affirmed the denial of petitioner's claim that counsel

8    conceded his guilt.  *Id.*  The court stated:

9                 Ninth, appellant claimed that counsel was ineffective in conceding
     his guilt to the jury.  Appellant failed to demonstrate that counsel's
10   performance was deficient.  Counsel did not concede guilt, however, the
     State's case was strong.  Appellant committed several different crimes
11   within a timeframe [sic] of approximately seven hours.  Two of the victims
     were familiar with appellant prior to the crimes.  All of the victims
12   identified appellant.  Appellant dropped his wallet containing his
     identification at the scene of one of the crimes.  Appellant left incriminating
13   evidence at one of the scenes, on which his fingerprints had been recovered.
     Appellant gave a voluntary statements implicating himself in all of the
14   crimes.  Counsel gave an extensive closing argument in which she
     identified all of the counts and the elements that the State had to prove.
15   The jury's verdict was consistent with counsel's argument in that they
     found appellant not guilty on three of the counts.  Appellant failed to
16   demonstrate that counsel's performance was deficient, and the district court
     did not err in denying this claim.

17   *Id.*

18         The Nevada Supreme Court's affirmance of this claim was not objectively unreasonable.

19   Petitioner's claim is belied by the record.  Defense counsel Avants did make a brief opening

20   statement at trial.  Exhibit 20, T 15-16.  Petitioner did not allege what else defense counsel could

21   have said during opening statements that would have changed the outcome of trial.  Furthermore,

22   there is no indication that defense counsel conceded petitioner's guilt at trial.  Petitioner has not

23   shown that trial counsel acted deficiently.  The Court will deny ground six.

24         **G.    Ground Seven**

25         In ground seven petitioner argues that his Fifth, Sixth, and Fourteenth Amendment rights to

26   effective assistance of counsel, a fair trial, and due process were violated when trial counsel (a)

27   allowed prejudicial pictures to be introduced to the jury at trial and (b) had a conflict of interest with

28   petitioner such that effective representation was precluded.

1          **1.      Counsel's Failure to Preclude Photographs at Trial**

2           Petitioner contends that Dr. Lovett testified at trial to victim Baptist's burn injuries.

3    Petitioner argues that the use of the enlarged photographic depictions of the victim's burn injuries

4    was unnecessary, prejudiced the jury and counsel improperly allowed the photographs to be entered

5    into evidence.

6           At trial Dr. Lovett testified he saw and treated victim Baptiste on October 25, 2001.  Exhibit

7    20, T 20.  The victim told the doctor that someone had poured gasoline on her and lit her on fire.  *Id.*

8    at T 21.   The state then showed the doctor four photographs of the victim that the burn unit had

9    taken.  *Id.* at T 23-24.  The state moved to admit the photographs into evidence, and the trial court

10   granted the motion, but stated that defense counsel "reserves the right to make a record in the

11   matter."  *Id.* at T 24-25.   The court also allowed the state to publish the photographs to jury by

12   showing the photographs using a projector and screen.  *Id.* at 25.  Dr. Lovett then testified to the

13   injuries that were depicted in each of the four photographs.  *Id.* at T 25-32.

14          At the evidentiary hearing defense counsel testified that she objected to the admission of the

15   photographs prior to trial.  Exhibit 46, at T 51.  Counsel stated that most of the photographs were not

16   allowed to be submitted at trial.  *Id.*  The court stated that this was typical, that the court would not

17   allow extra photographs that show blood and gore that would excite the jury.  *Id.* at 52.

18          The Nevada Supreme Court concluded that petitioner failed to show that counsel was

19   ineffective in this regard.  The court stated:

20              Tenth, appellant claimed that counsel was ineffective for failing to
        object to photo images of one of the victim's burn injuries, which
21      prejudiced the jury.  Appellant failed to demonstrate that counsel's
        performance was deficient.  Several photographs were not admitted due to
22      counsel's urging, and only four were admitted.  We conclude that the
        photographs assisted the jury in understanding the nature and quality of the
23      burns inflicted due to fire and were useful to the victim's physician to
        demonstrate the extent and permanence of the victim's injuries. [fn 11: *See*
24      *Wesley v. State*, 112 Nev. 503, 512-13, 916 P.2d 793, 800 (1996); *see also*
        *Thomas v. State*, 114 Nev. 1127, 1141, 967 P.2d 1111, 1121 (1998).]
25      Appellant failed to demonstrate that the admission of the photographs of
        the victim's injuries prejudiced the jury as to make the jury's verdict
26      unreliable.  Therefore, we conclude that the district court did not err in
        denying this claim.
27   Exhibit 49.

28          Claims of error from an allegedly erroneous admission of photographs will not normally state

1   a federal claim, however, a claim of violation of due process may arise from the introduction of

2   gruesome photographs of the victim.  *See Butcher v. Marquez*, 758 F.2d 373 (9th Cir. 1985);

3   *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982).  A federal court will not reverse a state court's

4   admission of photographs unless the admission of evidence so infects the trial with unfairness as to

5   render the verdict a denial of due process.  *See Romana v. Oklahoma*, 512 U.S. 1, 12 (1994);

6   *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (citing *Estelle v. McGuire*, 502 U.S. 62,

7   67-68 (1991)).  *See also Butcher*, 758 F.2d at 373; *Batchelor*, 693 F.2d at 865.  Admission of

8   photographs at trial rests largely within the discretion of the trial court.  758 F.2d at 865.

9        In the instant case, this Court cannot say that the introduction of the photographs so infected

10  the trial with unfairness as to render the verdict a denial of due process.  The state district court only

11  allowed four photographs depicting the victim's injuries at trial.  These photographs were used by

12  Dr. Lovett to explain to the jury the extent of the victim's injuries.  The Nevada Supreme Court

13  determined that these photographs did not prejudice the jury and thus make the verdict unreliable.

14  The factual findings of the state courts are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has

15  failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or

16  involved an unreasonable application of, clearly established federal law, as determined by the United

17  States Supreme Court, or that it was based on an unreasonable determination of the facts in light of

18  the evidence presented in the state court proceeding.  The Court will deny habeas relief with respect

19  to this portion of ground seven.

20          **2.**       **Conflict of Interest with Counsel**

21       In this portion of ground seven petitioner alleges that he was denied his rights to effective

22  assistance of counsel, a fair trial, and due process, due to a conflict of interest with counsel.

23  Petitioner states that there were hostilities on the part of defense counsel, and the complete lack of

24  preparing a defense clearly demonstrates the hostility and conflict.

25       At arraignment petitioner asked the court about how he could get a new attorney as counsel

26  told him that she would not be able to be his attorney after a duration of time.  Exhibit 6, T 4.

27  Counsel told the court that she was asking for medical leave, and would be out, but represented that

28  the public defender's office was ready, willing and able to continue to represent the petitioner.  *Id.* at

1    T 5.   Counsel told the court that she was staying on the case until her medical leave, and that she

2    would be overseeing the case and would be available to assist.  *Id.*  Moreover, another attorney from

3    the public defender's office would be brought on the case.  *Id.*

4         Petitioner then filed a motion to dismiss counsel and to have new counsel appointed.  Exhibit

5    7.  The state district court denied this motion.  Exhibit 12.  Petitioner filed a second motion to

6    dismiss counsel.  Exhibit 15.  The state district court held a hearing on March 1, 2002, to hear

7    argument on several motions, including petitioner's motion to dismiss counsel.  Exhibit 17.  At the

8    hearing petitioner told the court that he was considering having new counsel appointed because there

9    was a conflict of interest.  *Id.* at T 19-20.  Defense counsel stated that the issue was that originally

10   there were a few witnesses the state had noted it might call at trial that the public defender's office

11   had previously represented.  *Id.* at T 20.  The state had since determined that it was not going to call

12   those witnesses at trial.  *Id.*

13        The petitioner also told the court that he had given defense counsel information about

14   witnesses to contact who could testify on his behalf.  *Id.* at T 22.  Petitioner argued that only one

15   witness was contacted.  *Id.*   Defense counsel told the court that they had contacted all of the people

16   that petitioner had asked him to.  *Id.*  Counsel also stated that he had received documents and copies

17   of everything were provided to the petitioner.  *Id.*  Counsel stated that he also advised the petitioner

18   that the attorneys had done a thorough investigation, and that strategy was up to the attorneys.  *Id.*

19   Counsel believed that the witnesses and information they recieved would not be beneficial to the

20   case.  *Id.*   The court told petitioner that legal strategy was up to the attorney, and what strategy to use

21   was within counsel's discretion.  *Id.* at T 23.  The court stated that it could not allow petitioner to

22   change attorneys just because he did not agree with his lawyers' strategy.  *Id.* at T 24.  The court

23   denied petitioner's motion.  *Id.* at T 27.

24        The state district court addressed this issue at the evidentiary hearing.  Exhibit 46 at T 52.

25   Defense counsel told the court that she did tell the court before trial that either she was going to

26   represent the defendant or he was going to represent himself, but that he could not have it both ways.

27   *Id.*  Counsel also testified she never stated that she did not want to be petitioner's counsel.  *Id.* at 54.

28   Counsel did tell the petitioner at the time of the preliminary hearing that she might be having surgery

and might not be able to represent him during trial. *Id.*  Counsel also noted that while the petitioner

moved to dismiss counsel twice, the state district court denied those motions, therefore she had to

stay on the case. *Id.*

The Nevada Supreme Court determined that this claim was without merit.  Exhibit 49.  The

court stated:

> Eleventh, appellant claimed that counsel was ineffective for failing
> to remove herself as counsel.  Specifically, appellant claimed that counsel
> was not interested in representing appellant as exhibited by counsel stating
> that she would not be present for trial because of an intended medical leave.
> Appellant failed to demonstrate that counsel's performance was deficient,
> or that the outcome of the trial would have been different if he had different
> counsel.  Counsel stated that she was taking medical leave, however, that
> someone from the public defender's team, who understood the case, would
> substitute.  Furthermore, counsel was present at the trial, as the medical
> leave was postponed.  Counsel testified at the evidentiary hearing that she
> never said that she was not interested in representing appellant.  Appellant
> failed to demonstrate that counsel's performance was ineffective, and the
> district court did not err in denying this claim.

*Id.*

The Nevada Supreme Court's determination is not objectively unreasonable.  Petitioner must

show that trial counsel labored under an actual conflict, or that counsel was actively representing

conflicting interests and the conflict actually affected the adequacy of his representation.  *Cuyler v.*

*Sullivan*, 446 U.S. 335, 350 (1980).  Petitioner cannot show that counsel was representing conflicting

interests.

However, to compel a criminal defendant to undergo trial with an attorney "with whom he

has become embroiled in irreconcilable conflict is to deprive...[a criminal defendant] of the effective

assistance of counsel."  *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (citing *Brown v.*

*Craven*, 424 F.2d 1166 (9th Cir. 1970)).  In some cases the summary denial of a criminal defendant's

motion for new counsel, without further inquiry into the grounds of the motion, violates the Sixth

Amendment.  *Id.*  Essentially, a state trial court "has no discretion to ignore an indigent defendant's

timely motion to relieve an appointed attorney."  *Id.*  "However, not every conflict or disagreement

between...[a] defendant and counsel implicates Sixth Amendment rights."  *Id.* at 1027 (citing *Morris*

*v. Slappy*, 481 U.S. 1, 13-14 (1983) (holding the Sixth Amendment does not guarantee a meaningful

relationship between a defendant and counsel)).

1   There is no indication that petitioner and defense counsel were embroiled in an irreconcilable

2   conflict.   The state court held a hearing on this issue prior to trial, and addressed the issue again at

3   the evidentiary hearing.  The state courts found that no irreconcilable conflict existed.  The factual

4   findings of the state courts are presumed correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme

5   Court's determination is not an objectively unreasonable application of federal law.

6   The Court will deny ground seven.

7   **H.     Ground Eight**

8   Petitioner's eighth ground for relief is a claim of cumulative error.  The Court will address

9   this claim at the end of this order, as the Court cannot determine whether there was cumulative error

10  until every other claim in the petition is addressed first.

11  **I.     Ground Nine**

12  In ground nine petitioner contends that he was denied his rights to effective assistance of

13  appellate counsel due to appellate counsel's failure to (1) challenge his habitual felon enhancement

14  on appeal, and (2) to raise prosecutorial misconduct that occurred at trial.

15  The Nevada Supreme Court affirmed the denial of this claim on appeal, stating the following:

16              Appellant claimed that his appellate counsel was ineffective for
            failing to raise errors in his adjudication as a habitual felon.  Appellant
17          failed to demonstrate that the omitted issue had a reasonable probability of
            success on appeal.  As discussed above, appellant's adjudication as a
18          habitual felon was proper.  Thus, the district court did not err in denying
            this claim.

19  Exhibit 49.

20  Claims of ineffective assistance of appellate counsel are reviewed according to the standard

21  announced in *Strickland*."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).  A petitioner must

22  show that counsel unreasonably failed to discover nonfrivolous issues and there was a reasonable

23  probability that but for counsel's failures, he would have prevailed on his appeal.  *Smith v. Robbins*,

24  528 U.S. 259, 285 (2000).

25  The Nevada Supreme Court's determination was not objectively unreasonable.  This Court

26  discussed petitioner's adjudication as a habitual felon in grounds one, two, and three.  The Court

27  concluded that the state's notice of intent to seek a habitual felon adjudication was proper.

28  Moreover, it appears that the state provided the requisite prior convictions for the habitual felon

22

status, therefore petitioner's adjudication as a habitual felon was proper.  Appellate counsel was not

ineffective for failing to raise this claim on direct appeal, and there is no reasonable probability that

this claim would have prevailed on appeal.

Petitioner also claims that appellate counsel failed to argue instances of prosecutorial

misconduct on appeal.  However, petitioner does not provide any factual support for this claim, as he

does not list any of the alleged instances of prosecutorial misconduct.  Conclusory allegations which

are not supported by a statement of specific facts do not warrant habeas relief."  *James v. Borg*, 24

F.3d 20, 26 (9th Cir. 1994); *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).  Petitioner has

not shown that appellate counsel was ineffective for failing to argue on appeal that the prosecutor

engaged in misconduct, nor has he shown that there was a reasonable probability that this issue

would have prevailed on appeal.

The Court will deny ground nine.

**J.     Ground Ten**

In his tenth ground for relief petitioner alleges that he was deprived of his rights to equal

protection, a fair trial, due process, and his right against self-incrimination when the trial court

denied his motion to suppress his statement.  Petitioner argues that his statement to police was not

freely, voluntarily and knowingly given, in violation of his Fifth, Sixth, and Fourteenth Amendment

rights.

Petitioner raised this claim in his direct appeal.  The Nevada Supreme Court summarily

concluded that this claim was without merit, stating:

> Having reviewed Stanley's other arguments regarding the district court's
> denial of his motion to suppress a statement he made to police and the
> district court's practice of limiting counsel to only ask follow-up questions
> during voir dire, we conclude they are without merit.

Exhibit 38 at 8, n. 18.

At the preliminary hearing officer Wilson testified that after the petitioner was arrested, he

read the petitioner *Miranda*[2] warnings from his memory.  Exhibit 4, T 50-51.  Petitioner was told

that he had a right to remain silent and the right to have an attorney represent him.  *Id.* at T 51.

_____

[2]  *Miranda v. Arizona*, 384 U.S. 436 (1996).

23

1  Wilson stated that the petitioner told him that he understood his rights, and decided to waive his

2  rights and speak to the officers. *Id.*  The officer did not tape the waiver of rights, nor did he have the

3  petitioner sign a waiver of rights form. *Id.* at T 52.  Officer Wilson also testified that the petitioner

4  was calm, awake, and did not appear disoriented. *Id.* at T 53.  Wilson told the court that later during

5  the interview the petitioner appeared tired, but at the beginning of the interview he was very alert.

6  *Id.*

7  　　Detective Herring also testified at the preliminary hearing. *Id.* at T 56.  When Herring spoke

8  with petitioner he knew that the petitioner had been read his *Miranda* rights by another officer. *Id.*

9  Herring did not re-read the petitioner his *Miranda* rights. *Id.*  Herring tape recorded the interview

10  with the petitioner. *Id.* at T 57.  Petitioner told the detective that he took a wallet from victim Billy

11  Barba. *Id.*  Furthermore, petitioner admitted to pulling Barba out of his car and taking his vehicle.

12  *Id.* at T 57-58.  Petitioner then told the officer that at the Budget Inn he punched the clerk in the eye,

13  physically struggled with the clerk, took money from the cash register and fled the hotel. *Id.* at T 58-

14  59.  Petitioner also told the police officer that he attempted to take an elderly man's car, but the man

15  would not give it to him. *Id.*

16  　　Petitioner next told Detective Herring that the High Hat Motel was holding his clothing and

17  personal items, and he became upset. *Id.* at T 60.  The petitioner sprayed gasoline on the woman

18  behind the counter, lit a match and set the woman on fire. *Id.*  Herring testified that during the

19  interview the petitioner told him that he had been up "for awhile" and was tired. *Id.* at T 61.  The

20  officer stated that petitioner told him he had been using drugs for four days. *Id.* at T 65.  Herring had

21  encountered people that were under the influence of drugs prior to this case, and the petitioner did

22  not appear to be under the influence, he just appeared tired. *Id.*

23  　　After the preliminary hearing, defense counsel moved to suppress the petitioner's confession.

24  Exhibit 14.  Defense counsel argued that there is no evidence that the police gave petitioner the

25  proper *Miranda* warnings, or that the petitioner freely and voluntarily waived those rights. *Id.*  The

26  trial court denied the motion after hearing argument from counsel.  Exhibit 17.

27  　　The written transcript of petitioner's post-arrest interview with police states the following:

28  　　　　Q: I hear ya.  Okay.  Uhm, I think that's about it.  Do you remember when,

24

uh...when you first came in here you were talking to Officer Wilson –
around the corner over there?

A: Yeah. I --

Q: He, uh...he read ya your Miranda Rights, remember that?

A: Yeah.  He --

Q: You remember him doin' that?

A: Yeah.

Q: You understood them, Right?

A: Yeah.

Attached at Exhibit 14.

At trial Officer Wilson testified that he gave the petitioner *Miranda* warnings after he transported him to the jail.  Exhibit 21, T 27.  Officer Wilson stated that upon arrest and transport the petitioner was not answering questions, but once they reached the jail, the petitioner initiated a conversation with him.  *Id.*  Once petitioner told him his name, the officer read him his *Miranda* rights.  *Id.* at T 28.  Officer Wilson recited the rights from memory.  *Id.*  Wilson told the jury that he stated that the petitioner had the right to remain silent, that anything he said could be used against him, that the had the right to an attorney prior to questioning, and this if he could not afford an attorney, one would be appointed.  *Id.* at T 29.  The petitioner indicated that he understood those rights.  *Id.*  The petitioner then told him that would speak with the police officers.  *Id.*

The Nevada Supreme Court's summary rejection of this claim was not objectively unreasonable.  Petitioner was in custody, as he had been arrested, and therefore police were required to give the petitioner *Miranda* warnings.  *Thompson v. Keohane*, 516 U.S. 99, 101 (1995).   Officer Wilson testified at the preliminary hearing and at trial that he read petitioner his *Miranda* rights, and that the petitioner waived those rights.  Although a defendant's waiver of *Miranda* warnings must be knowing, voluntary, and intelligent, a *Miranda* waiver does not have to be express, and can instead be implied.  *United States v. Younger*, 398 F.3d 1179, 1185-86 (9th Cir. 2005) (citations omitted).  Although there is no written record of petitioner's waiver, petitioner told Detective Herring, after his interview, that he had been read his *Miranda* rights by Officer Wilson, and he understood those

1  rights.  Moreover, he told the officers that he wanted to cooperate with them, and began to speak

2  with the officers.   While the waiver may not have been express, there is no indication that the waiver

3  was involuntary or unknowing.

4       Petitioner also has not shown that any part of his statements, oral statements or taped, would

5  have been suppressed due to intoxication.  "A confession is voluntary if it is 'the product of a

6  rational intellect and a free will'" regardless of whether "'a confession is the production of...a drug-

7  [alcohol-] induced state.'"  *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989) (citing

8  *Townsend v. Sain*, 372 U.S. 293 (1963)).  The *Medeiros* court stated that the petitioner in that case

9  was unable to overcome the fact that his first statement to police was voluntary, because although the

10  petitioner was intoxicated, he was not incapacitated.  *Id.*  The court noted that the petitioner could

11  drive, obey officer orders and cooperate with the officers.  *Id.*

12       In the instant case the petitioner told the officers that he had been under the influence of

13  drugs for four days prior to the commission of the crimes.  Petitioner also told the officers that he

14  had not slept.  Officer Wilson stated that when he first talked to petitioner he was calm, awake, and

15  oriented.  Detective Herring testified that while the petitioner appeared tired, he did not appear under

16  the influence of drugs.  Similar to *Medeiros*, petitioner has not shown that his statement should have

17  been suppressed due to his alleged intoxication.

18       Petitioner has not shown that the Nevada Supreme Court's rejection of this claim was an

19  unreasonable application of United States Supreme Court precedent.  The Court will deny ground

20  ten.

21       **K.       Ground Eleven**

22       In ground eleven petitioner contends that his Fifth and Fourteenth Amendment rights to due

23  process were violated when the trial court incorrectly advised and instructed the jury about larceny

24  from a person.

25       The petitioner was charged in count II with larceny from the person, and the amended

26  information stated the petitioner "did then and there wilfully, unlawfully, and feloniously, under

27  circumstances not amounting robbery, with intent to steal or appropriate to his own use, take from

28  the person of another, to-wit: BILLY BARBA, without his consent, personal property, to-wit: wallet

and lawful money of the United States." Exhibit 11.   The trial court instructed the jury as follows

on larceny from the person: "Every person who, under circumstances not amounting to robbery, with

intent to steal or appropriate to his own use, takes from the person of another, without his consent,

any money, property or thing of value is guilty of Larceny From the Person."  Exhibit 26.

During deliberations the jury sent the trial court a note asking if in order to find the petitioner

guilty of larceny of a person they had to find that the petitioner took both money _and_ a wallet from

the victim.  Exhibit 27, T 3.  The judge told the jury that they did not have to find both in order to

find the petitioner guilty of larceny from a person.  _Id._ at T 3-5.  Petitioner was convicted of larceny

from a person.  Exhibits 28 and 33.

Petitioner raised the instant claim in his direct appeal.  The Nevada Supreme Court found the

claim to be without merit.  The court stated:

> Stanley first argues the district court erred in responding to the jury question regarding larceny from the person.  He contends the district court improperly rewrote the amended information.
>
> In this case, while it is disputed whether Stanley took any money from Barba, Stanley clearly took Barba's wallet.  The district court's response to the jury was a correct statement of law, i.e., the State only needed to prove beyond a reasonable doubt that Stanley took property–Barba's wallet alone was sufficient. [fn 1: _See_ NRS 205.270(1) and NRS 205.2195.] Based on the statute, we conclude the district court did not err in its response to the jury question.

Exhibit 38.  The Nevada Supreme Court's determination was not objectively unreasonable.  The jury

instruction was a correct statement of Nevada law.  NRS 205.270(1); NRS 205.2195.  The state only

had to prove that the petitioner took property from the victim.  Petitioner has not shown how this jury

instruction violated his due process rights and resulted in an unfair trial.

The Court will deny ground twelve.

**L.      Ground Twelve**

In ground twelve petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights to

a fair trial and due process were violated when the trial court denied defense counsel's request to ask

the jury its pre-submitted voir dire questions.

Petitioner raised this claim in his direct appeal.  The Nevada Supreme Court summarily

concluded that this claim was without merit, stating:

27

1
2
3

> Having reviewed Stanley's other arguments regarding the district court's denial of his motion to suppress a statement he made to police and the district court's practice of limiting counsel to only ask follow-up questions during voir dire, we conclude they are without merit.

4   Exhibit 38 at 8, n. 18.  The Nevada Supreme Court's determination that this claim was without merit

5   is not objectively unreasonable.

6       "Voir dire examination serves the dual purposes of enabling [a] court to select an impartial

7   jury and assisting counsel in exercising peremptory challenges."  *Mu'Min v. Virginia*, 500 U.S. 415,

8   431 (1991).  A trial court generally has broad discretion in conducting voir dire.  *Id.* at 423.  "The

9   Constitution...does not dictate a catechism for voir dire, but only that the defendant be afforded an

10  impartial jury."  *Morgan v. Illinois*, 504 U.S. 719, 730 (1992) (citations omitted).  A trial court's

11  failure to ask specific questions will only be overturned if the failure renders a defendant's trial

12  fundamentally unfair."  *Id.* at n. 5.

13      Petitioner has not demonstrated how the trial court's refusal to use defense counsel's pre-

14  submitted voir dire questions rendered his trial unfair and resulted in an impartial jury.  Defense

15  counsel was allowed to ask the potential jury members questions during voir dire, the court merely

16  disallowed the specific pre-submitted questions.  Exhibits 18 and 19.  There is no indication that the

17  Nevada Supreme Court unreasonably applied federal law.  The trial court had broad discretion to

18  conduct voir dire, and petitioner does not state that the trial court failed to ask the venire panel any

19  questions.  Instead petitioner contends that he was only permitted to ask follow-up questions that

20  relate to the questions asked by the trial judge.   There is no indication that the trial court abused its

21  discretion in conducting voir dire in this case.

22      The Court will deny this claim.

23      **M.    Ground Thirteen**

24      In ground thirteen petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights

25  to a fair trial by an impartial jury and due process were violated when the trial court allowed the state

26  to use a peremptory challenge to dismiss a black juror, which amounted to a *Batson* violation.

27      During voir dire potential juror Washington told the court that her brother was serving a

28  sentence for robbery.  Exhibit 19, T 73.  Washington explained that her brother escaped after five

1    years, was caught, and is serving a sentence as a result of the escape.  *Id.*  Washington indicated that

2    she did not think it was fair that he was serving time, as he served his five years for robbery, and the

3    state would not release him, so he escaped.  *Id.* at T 73-76.  Washington further stated that she

4    understood the state may be the same office that put her brother in prison, but thought she could

5    make a fair decision.  *Id.* at T 76.

6         Washington also told the court that she worked as a legal secretary for seven years at a law

7    firm in Las Vegas.  *Id.* at T 77. Washington explained that the law firm she worked at handles civil

8    cases, and she worked in the gaming and securities department.  *Id.*   The state exercised a

9    peremptory challenge to remove prospective juror Washington.  *Id.* at T 85.

10        Defense counsel objected to the removal of juror Washington, as she was African American,

11   and asked for a race neutral reason.  Exhibit 24.   The state argued that the potential juror was a

12   paralegal, and that sometimes people who know something about the law try to manipulate the

13   process.  *Id.*  The state also named as a second reason the fact that the juror stated her brother was

14   treated unfairly.  *Id.*  The state felt the juror could not be fair to the District Attorney's Office.  *Id.*

15   Finally, the state noted that there was an African American juror on the jury that the state did not

16   exercise a peremptory challenge against.  *Id.*  The trial court found no *Batson* violation.  *Id.*

17        The Nevada Supreme Court found the instant claim to be without merit.  The court stated:

18             Next, Stanley argues the district court erred in denying his *Batson
19             v. Kentucky* [fn 2:  476 U.S. 79 (1986).] challenge regarding the State's use
               of a peremptory challenge to dismiss a prospective black juror.

20             *Batson*, and its related progeny, set forth a three-step process for
21             evaluating race-based objections to peremptory challenges: (1) the
               opponent of the peremptory challenge must make a prima facie showing of
               racial discrimination; (2) the burden of production then shifts to the
22             proponent of the strike to come forward with a race-neutral explanation;
               and (3) if a race-neutral explanation is tendered, the trial court must decide
23             whether the opponent of the strike has proved that the proffered race-
               neutral explanation is merely a pretext for purposeful racial discrimination.
24             [fn 3: *Doyle v. State*, 112 Nev. 879, 887, 921 P.2d 901, 907 (1996) (citing
               *Purkett v. Elem*, 514 U.S. 765, 767-69 (1995)); *Batson v. Kentucky*, 476
25             U.S. 79, 91-99 (1986).]

26             In this case, Stanley has failed to offer any proof in support of his
27             allegation that Washington was dismissed based on race.  Thus, we
               conclude that Stanley failed to make a prima facie showing of racial
               discrimination.  Even if Stanley had satisfied the first prong of *Batson*, the
28             State's given reasons are race-neutral under *Purkett*, which requires only

1

2

> reasons that are "facially neutral" and not necessarily "persuasive, or even plausible." [fn 4: *Purkett*, 514 U.S. at 768.] Accordingly, we conclude the district court did not err in denying Stanley's *Batson* challenge.

3 Exhibit 38.

4      "Peremptory challenges are not of constitutional dimension. They are a means to achieve the

5 end of an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Poland v. Stewart*, 169 F.3d

6 573, 583 (9th Cir. 1999). The exception to this rule is when a peremptory challenge is used to

7 excuse a potential juror for discriminatory reasons, under the Equal Protection Clause. *Batson v.*

8 *Kentucky*, 476 U.S. 79, 89 (1986). *Batson* requires (1) a defendant raising a *Batson* claim to

9 establish a prima facie case of discrimination, (2) the state to show a race-neutral reason for the

10 peremptory strike, and (3) the trial court to determine whether the defendant has shown purposeful

11 discrimination. *Id.*

12      The state clearly gave proper race-neutral reasons for its peremptory strike of prospective

13 juror Washington. The defense did not show purposeful discrimination in this case. The Nevada

14 Supreme Court's determination was not an objectively unreasonable application of *Batson*.

15      The Court will deny ground thirteen.

16      **N.**      **Ground Fourteen**

17      In his fourteenth and final claim petitioner alleges his Fifth, Sixth, and Fourteenth

18 Amendment rights to due process and a fair trial by an impartial jury were violated when the state

19 district court dismissed a black juror who arrived in court fifteen minutes late.

20      Prospective juror Hymes was not present when the trial court swore the venire panel in and

21 began voir dire. Exhibit 18. When the juror arrived the trial court dismissed the juror. *Id.* The

22 defense challenged the potential juror's removal, noting that Hymes was African American. Exhibit

23 24. The state argued that it dismissed the juror based upon the fact that the juror had missed opening

24 remarks of jury selection. *Id.*

25      The Nevada Supreme Court determined that this claim was without merit, and stated on

26 direct appeal:

27

28

> Stanley also argues the district court erred in dismissing prospective juror Hymes. Considering that Hymes arrived approximately fifteen minutes late causing her to miss essential introductory information, including the

1    swearing in of the jury panel, we conclude the district court did not err in
2    dismissing her.

3    Exhibit 38.

4    The Nevada Supreme Court's finding that this claim was without merit is not objectively

5    unreasonable.  Although prospective juror Hymes was African American, the state gave a race-

6    neutral reason for dismissing the juror pursuant to *Batson*.  The petitioner has not shown that the

7    state or the district court engaged in purposeful discrimination when they dismissed prospective juror

8    Hymes.

9    The Court will deny ground fourteen.

10    **O.    Cumulative Error**

11    Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated due to

12    trial counsel's cumulative errors.

13    The cumulative error doctrine recognizes that the cumulative effect of several errors may

14    prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

15    *Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does *not*

16    permit the Court to consider the cumulative effect of *non-errors*.  *See Fuller v. Roe*, 182 F.3d 699,

17    704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S. 473 (2000) ("where

18    there is no single constitutional error existing, nothing can accumulate to the level of a constitutional

19    violation").

20    The Nevada Supreme Court stated that petitioner failed to establish any errors by counsel or

21    that his case was prejudiced in any way by counsel's performance, therefore no cumulative error

22    existed.  Exhibit 49.   As the Nevada Supreme Court found, all of petitioner's claims are without

23    merit, therefore he has failed to demonstrate any cumulative error.  This claim fails.

24    The Court will deny ground eight.

25    **IV.    Certificate of Appealability**

26    In order to proceed with an appeal from this court, petitioner must receive a certificate of

27    appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of

28    the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court

has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that standard. Accordingly, the Court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that grounds one and three are **DISMISSED**. The Court finds these grounds were procedurally defaulted in the state court.

**IT IS FURTHER ORDERED** that the petition for writ of habeas corpus (docket #10) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**.

Dated this 25th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE